UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RREEF INFRASTRUCTURE (G.P.)
LIMITED, et al.,

    *Petitioners*,

v.

KINGDOM OF SPAIN,

    *Respondent*.

Civil Action No. 1:19-cv-03783 (CJN)

**MEMORANDUM OPINION**

Petitioners RREEF Infrastructure (G.P.) Limited and RREEF Pan-European Infrastructure Two Lux S.A.R.L. (collectively "RREEF") initiated this action to recognize and enforce an arbitral award they won against Respondent, the Kingdom of Spain. *See generally* Pet., ECF No. 1. Spain has moved to dismiss RREEF's petition, or in the alternative, to stay these proceedings until the resolution of Spain's application to annul the award before the International Centre for Settlement of Investment Disputes. *See generally* Resp't Mot. to Dismiss the Pet. or Stay the Proceeding, ECF No. 16. Consistent with how other courts in this district have addressed motions to stay when an application to annul an arbitral award remains pending before ICSID, the Court stays these proceedings until ICSID adjudicates Spain's application.

**I.**    **Background**

RREEF Infrastructure and RREEF Pan-European are, respectively, Jersey- and Luxembourg-based companies that specialize in infrastructure investments. *RREEF Infrastructure (G.P.) Limited v. Spain*, ICSID Case No. ARB/13/30, Award, ¶ 4 (Dec. 11, 2019),

1

ECF No. 1-1 at 5.  In 2005, Spain created a special incentive regime to encourage infrastructure investment in the country's renewable energy sector.  *See RREEF Infrastructure (G.P.) Limited v. Spain*, ICSID Case No. ARB/13/30, Decision on Responsibility, ¶ 91 (Nov. 30, 2018), ECF No. 1-1 at 110.  Relying on these inducements, RREEF invested around €300.8 million in wind and solar power projects in Spain.  *Id.* ¶¶ 159, 163, 174.

But Spain's favorable incentive regime was short-lived.  Beginning in 2012, only a few years after RREEF made its investments, Spain adopted several new decrees retrenching on, and eventually revoking, the incentives on which RREEF relied.  *Id.* ¶¶ 127–44, 589, 600.  These changes cut RREEF's returns on its investments.  Award ¶¶ 56–57.

Two treaties govern RREEF's investments in Spain:  the Energy Charter Treaty and the International Centre for Settlement of Investment Disputes Convention.  The Energy Charter Treaty is a multilateral investment treaty among 52 nations and regional organizations—including Spain, the United Kingdom, and Luxembourg—to establish a legal framework for promoting long-term cooperation in the energy field.  Energy Charter Treaty, ECF No. 1-3, art. 2.[1]  The Treaty "obligates signatories to, *inter alia*, protect investments made in their domestic territories by investors from foreign signatory states."  *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 36 (D.D.C. 2019).  As relevant here, Article 26 provides that "[d]isputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former" can be submitted to international arbitration at the investor's election.  Energy Charter Treaty art. 26(1), (3)(a).

The ICSID Convention further protects investors like RREEF by facilitating enforcement of arbitration awards arising from violations of the Energy Charter Treaty.  The Convention is a

---

[1] Upon ratifying the Treaty, the United Kingdom immediately extended it to the UK's protectorate, Jersey, as authorized by Article 40(2).

multilateral agreement signed by 163 states—including Spain, Luxembourg, the United Kingdom, and the United States—that provides a framework for arbitrating investment disputes "between Contracting States and nationals of other Contracting States."  ICSID Convention, pmbl., ECF No. 1-2.[2]

In October 2013, RREEF submitted a request for arbitration with Spain under the ICSID Convention.  *See* Decision on Responsibility ¶ 14.  RREEF alleged that Spain's actions, which diminished the returns on RREEF's investments, breached Spain's obligation under the Energy Treaty Charter.  *See id.* ¶ 11.  The ICSID constituted an arbitral panel, which determined—over Spain's various arguments to the contrary—that it had jurisdiction over the matter.  *See RREEF Infrastructure (G.P.) Limited v. Spain*, ICSID Case No. ARB/13/30, Decision on Jurisdiction, ¶ 4 (June 6, 2016), ECF No. 1-1 at 42.  In November 2018, the arbitral panel issued a decision on the merits, concluding that by applying its legislative actions retroactively and by failing to ensure a reasonable return on RREEF's investments, Spain had breached its obligation to accord fair and equitable treatment to RREEF's investments, as required by Article 10(1) of the Treaty.  *See* Decision on Responsibility ¶¶ 474, 600.  And, in December 2019, the panel issued an Award directing Spain to pay RREEF €59.6 million in damages, plus 2.07% interest from June 30, 2014 until Spain satisfies the Award in full.  Award ¶ 81(a)–(b).

Enforcement of ICSID awards in the United States is governed by 22 U.S.C. § 1650a, which implements the treaty obligations of the United States, as a contracting party to the ICSID Convention, to ensure that U.S. courts treat an ICSID award "as if it were a final judgment" of a state court.  ICSID Convention, art. 54(1).  Section 1650a thus provides that "[t]he pecuniary

---

[2] Under Article 70 of the ICSID Convention, the United Kingdom extended the Convention's application to Jersey. *See* ICSID, *Contracting States and Measures Taken by Them for the Purpose of the Convention* (Feb. 2019), http://tiny.cc/0s0rpz.

obligations imposed by [an ICSID] award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). Federal district courts have "exclusive jurisdiction" over actions to enforce an ICSID award. *Id.* § 1650a(b).

In December 2019, RREEF filed a petition to enforce the arbitral award in this Court. *See generally* Pet. Spain in turn applied to ICSID for annulment of the award. Consistent with its governing Convention, ICSID stayed enforcement of the award pending the annulment tribunal's decision. *See* ICSID Convention art. 52(5). Later that month, Spain moved to dismiss RREEF's petition for a lack of jurisdiction or to stay the proceedings until the ICSID tribunal concludes its review of Spain's annulment application. *See* Resp't Mot. at 2–3. The European Commission filed an amicus brief in support of Spain's motion. *See* Amicus Brief by European Commission, ECF No. 29.

## II.     Analysis

Spain moves to dismiss on several grounds, including that the Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act. *See* Resp't Mot. at 1–2. In the alternative, Spain moves for a stay until ICSID concludes its annulment proceedings. *See id.* at 30–32. "Rather than delve prematurely into EU case law, international treaties, and sovereign constitutions," the Court will stay the proceedings. *Masdar*, 397 F. Supp. 3d at 38.

Courts must address jurisdiction before turning to the merits. *See Foster v. Chatman*, 136 S. Ct. 1737, 1745 (2016). There are, however, "certain non-merits, non-jurisdictional issues [that] may be addressed preliminarily, because 'jurisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting *Sinochem Int'l. Co. v. Malaysia Int'l Shipping Co.*,

529 U.S. 422, 431 (2007)).  One such threshold issue is a stay of a petition to recognize and enforce an arbitral award.  Both the Court of Appeals and courts in this district have concluded it is appropriate to stay cases, like this one, seeking recognition or enforcement of an arbitral award when proceedings to annul the underlying award are ongoing in a foreign jurisdiction.  *See, e.g. Telcordia Techs., Inc. v. Telkom S.A. Ltd.*, 95 F. App'x 361, 362–63 (D.C. Cir. 2004); *Masdar*, 397 F. Supp. 3d at 38–39.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  When determining whether to stay proceedings, a court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties."  *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724,732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55).  The party seeking the stay bears the burden and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'"  *Philipp v. Fed. Republic of Ger.*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (quoting *Landis*, 299 U.S. at 255).

Considerations of judicial economy favor a stay.  Spain's application to annul the arbitral award presents many of the same arguments that it presses here.  In general, "[l]itigating essentially the same issues in two separate forums is not in the interest of judicial economy." *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005) (quoting *Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc.*, 274 B.R. 1, 3 (D.D.C. 2002)).  These negative effects on judicial economy are even stronger when "it is clear that the outcome of [the other] proceedings . . . may affect this Court's determinations, at a minimum, by virtue of the[ir] persuasive value." *Hulley*

*Enters., Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 284 (D.D.C. 2016).  There can be no serious dispute that the ICSID proceedings could significantly impact this litigation.  After all, ICSID might annul the award that RREEF seeks to confirm and enforce.  If this Court were to affirm an award that ICSID later annuls, "[m]ore expensive litigation involving more complex issues would result."  *In re Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 114 (D.D.C. 2015) (cleaned up).

The possible hardships to each party also favor Spain, which will be significantly burdened by having to attack the validity of the award in two forums.  And if the Court were to confirm the award now, Spain could face the arduous task of trying to recover seized assets if its annulment application before the ICSID proves successful.  *See Getma Int'l*, 142 F. Supp. 3d at 118.  To be sure, RREEF has a strong interest in quickly collecting its arbitral award, but that interest is less acute both because ICSID has already stayed enforcement of the award and because RREEF will be compensated for further delay by the interest that continues to accrue on the award.  In the Court's view, the hardship to Spain absent a stay outweighs the hardship of a stay to RREEF.

The Court therefore concludes that these proceedings should be stayed until the annulment proceedings before the ICSID conclude.  Other courts in this district have reached the same conclusion when faced with similar circumstances.  *See, e.g.*, *Infrastructure Servs. Luxembourg S.a.r.l. v. Kingdom of Spain*, Civ. No. 18-1753, ECF No. 36 (Aug. 28, 2019) (staying the proceedings pending the ICSID's annulment decision); *Masdar*, 397 F. Supp. 3d at 34 (same); *Novenergia II—Energy & Environment (SCA) v. Kingdom of Spain*, Civ. No. 18-1148, 2020 WL 417794 (D.D.C. 2020) (same).

6

Although a stay is warranted, "a court abuses its discretion in ordering a stay of indefinite duration in the absence of a pressing need." *Belize Soc. Dev. Ltd.*, 668 F.3d at 732.  The Court will therefore require the parties to provide regular status updates regarding the status of the ICSID annulment proceedings.  The Court will promptly turn to the merits of the petition when those proceedings conclude.

### III.   Conclusion

For these reasons, the Court grants Spain's Motion in part and stays the proceedings until ICSID rules on Spain's application to annul the arbitral award.  An order will issue along with this memorandum opinion.

DATE: March 31, 2021

CARL J. NICHOLS
United States District Judge