UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLASKET RENEWABLE INVESTMENTS,<br><br>*Petitioner*,<br><br>v.<br><br>KINGDOM OF SPAIN,<br><br>*Respondent*. | Civil Action No. 1:19-cv-3783 (CJN) |

**MEMORANDUM OPINION**

This matter is before the Court on Spain's renewed motion to dismiss the petition to confirm an ICSID arbitration award that was entered against it in an investor-State dispute arising under the Energy Charter Treaty. Spain presently raises only "merits" defenses to confirming the award; it acknowledges that the Court of Appeals' recent decision in *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088 (D.C. Cir. 2024), establishes the Court's jurisdiction. For the reasons below, the Court denies Spain's renewed motion to dismiss and grants the petition to confirm the award.

**I.     Background**

As the Court explained in its prior memorandum opinion, *see* ECF No. 33, this case grows out of an investment dispute between the Kingdom of Spain and two infrastructure companies—a Jersey-based entity called RREEF Infrastructure (G.P.) Limited and a Luxembourg-based entity called RREEF Pan-European Infrastructure Two Lux S.A.R.L. ECF No. 1 (Pet.) ¶¶ 1–2, 11–13. Those companies, collectively known as RREEF, invested approximately €300.8 million in wind and solar power projects within Spain's territory. *Id.* ¶ 7. But Spain later modified its subsidy

1

regime for renewable energy projects, thereby altering "the economic incentives on which RREEF had relied" and "substantially reduc[ing] RREEF's returns." *Id.* RREEF believed that conduct breached Spain's obligations under the Energy Charter Treaty (ECT), a multilateral investment treaty that "establishes a legal framework in order to promote long-term co-operation in the energy field" and seeks to "creates stable, equitable, favourable and transparent conditions" for qualified investors.[1] *Id.* ¶¶ 8, 13. RREEF accordingly instituted arbitration under the ECT, and a tribunal constituted by the International Centre for Settlement of Investment Disputes (ICSID) ultimately issued an award requiring Spain to pay RREEF €59.6 million in damages, plus interest. *Id.* ¶ 19.

After receiving the award, RREEF petitioned to enforce it here pursuant to the ICSID Convention.[2] *See generally id.* Spain moved to dismiss the petition, on four grounds. *See* ECF No. 16 (MTD). *First*, Spain argued that the Court lacked subject matter jurisdiction under the arbitration exception to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a)(6), because EU member states[3] allegedly are categorically prohibited from arbitrating disputes with EU nationals like RREEF.[4] *Id.* at 15–20. *Second*, Spain argued that granting the petition would

---

[1] At all relevant times, Spain, Luxembourg, and the United Kingdom were signatories of the ECT. The United Kingdom has extended the ECT to Jersey, its protectorate. *See* Pet. ¶¶ 10–11.

[2] Spain, Luxembourg, the United Kingdom, and the United States are all signatories of the ICSID Convention, which obligates those nations' courts to mutually enforce ICSID arbitral awards. *See* ECF No. 33 at 2–3; ECF No. 1-2 at 20. Again, the United Kingdom has extended the Convention's application to Jersey. *See* ECF No. 33 at 3 n.2.

[3] At all relevant times, the United Kingdom was a member of the EU. But petitioners have maintained throughout this litigation that, even if Spain's intra-EU objection generally barred enforcement, it would not do so as "to [] RREEF Infrastructure[,] because Jersey, where RREEF Infrastructure is incorporated, is not part of the EU." ECF No. 17 (Opp.) at 33; *see also* ECF No. 70 at 9 n.4.

[4] Spain also argued that the Court lacked subject matter jurisdiction under the waiver exception to the FSIA, 28 U.S.C. § 1605(a)(1). *See* MTD at 20–23.

violate the foreign sovereign compulsion doctrine, both in light of the alleged bar on intra-EU investor-State arbitration and because EU law purportedly conditions the payment of "state aid," including arbitral awards compensating for the revocation of subsidies, on the approval of the European Commission. *Id.* at 24–25. *Third*, Spain argued that the arbitral award was not entitled to "full faith and credit," 22 U.S.C. § 1650a(a), again because the arbitral tribunal allegedly lacked jurisdiction both to hear the dispute and to order monetary relief. *Id.* at 25–26. *Last*, Spain argued that the Court should dismiss the petition under the *forum non conveniens* doctrine, since resolving any of its arguments against enforcement would in its view "require the Court to wade into complex matters of EU law and the ECT." *Id.* at 2. In the alternative, Spain asked the Court to stay the case pending the ICSID ad hoc committee's resolution of Spain's application to annul the award. *Id.* at 3.

The Court granted Spain's request for a stay without reaching its other arguments. *See generally* ECF No. 33. As the Court explained, judicial economy favored letting the foreign proceedings play out before adjudicating the merits of RREEF's petition, since "Spain's application to annul the arbitral award present[ed] many of the same arguments" as Spain's motion to dismiss, and annulment of the award would "significantly impact" the U.S. litigation. *Id.* at 5–6. The Court further ordered the parties to file regular status reports as to the progress of the annulment proceedings during the stay's pendency, and denied Spain's motion to dismiss without prejudice to its renewal after the stay was lifted. *See* ECF No. 32.

In June 2022, the parties notified the Court that the ICSID committee had denied Spain's annulment application. *See* ECF No. 44. The parties proposed that Spain's motion to dismiss, which it intended to renew, be decided based on the existing briefing, in addition to supplemental briefs that the parties filed in July 2022. *See* ECF No. 46. While Spain's renewed motion was

3

pending, however, appeals were docketed in the Court of Appeals in three cases that likewise concerned efforts to enforce ECT arbitral awards against Spain, and thus presented overlapping issues with this case. The Court therefore left its prior stay in place pending resolution of those related cases.

The Court of Appeals issued its mandate in those cases in December 2024. It resolved them in a single opinion, holding, as relevant here, that (1) the FSIA did not immunize Spain from the companies' enforcement suits because, "in ratifying the ECT, Spain provided unconditional consent to arbitrate investment disputes with the investors of at least some of the other signatory nations," and (2) *forum non conveniens* was inapplicable because that doctrine "is not available in proceedings to confirm a foreign arbitral award." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1102–04, 1105 (D.C. Cir. 2024) (quotation marks omitted). The Court of Appeals did not address, however, "the merits question whether [the ECT's] arbitration provision extends to EU nationals and thus whether Spain ultimately entered into legally valid agreements with the companies." *Id.* at 1104.

Soon after the mandate issued, the parties here filed a status report outlining their proposed next steps. *See* ECF No. 59. Spain asked the Court to maintain the stay pending the disposition of its forthcoming petition for certiorari in *NextEra*; RREEF asked the Court to lift the stay and decide the motion to dismiss after ordering supplemental briefing. *Id.* ¶¶ 6, 10–11. The parties agreed, however, that if the Court did lift the stay, adjudicating the motion to dismiss with the benefit of supplemental briefing was the appropriate course of action, and would "allow the Court to resolve all of [the] arguments necessary for entry of judgment." *Id.* ¶¶ 6–7. The parties also agreed that the Court should grant RREEF's pending (and previously opposed) motion to substitute

4

as petitioner Blasket Renewable Investments, LLC, the assignee of RREEF's arbitral award. *Id.* ¶ 8; *see also* ECF 51.

In April 2025, the Court lifted the stay, granted the motion to substitute, and ordered supplemental briefing according to the parties' proposed schedule. *See* Min. Orders of Apr. 4, 2025.

## II. Legal Standard

A motion to dismiss a petition to confirm an arbitral award for reasons other than lack of jurisdiction is evaluated under the Rule 12(b)(6) standard. *See MOL Hungarian Oil & Gas PLC v. Republic of Croatia*, 2025 WL 1134945, at *3 & n.4 (D.D.C. 2025). Accordingly, "[i]n considering such a motion, the [petition] must be construed liberally in the [petitioner]'s favor with the benefit of all reasonable inferences derived from the facts alleged." *Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2024 WL 4298808, at *3 (D.D.C. 2024) (quotation marks omitted). The Court may also "consider any documents either attached to or incorporated in the complaint and matters of which the Court may take judicial notice." *Id.* (quotation marks and alterations omitted). "A respondent may argue for dismissal based on an affirmative defense only when the facts that give rise to the defense are clear from the face of the petition." *MOL*, 2025 WL 1134945, at *3 (quotation marks omitted).

## III. Analysis

Spain concedes that the Court of Appeals' decision in *NextEra* "forecloses" the FSIA and *forum non conveniens* defenses it raised in its initial motion to dismiss. ECF No. 69 at 1 (citing 112 F.4th at 1094, 1105). That leaves Spain with only its two "merits" arguments from that motion: (1) that the arbitral award is not entitled to full faith and credit and (2) that granting the petition would violate the foreign sovereign compulsion doctrine. *See* ECF No. 66 at 10–20.

### A. Full Faith and Credit

The statute implementing the ICSID Convention provides that an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). But not every state court judgment is due "full faith and credit," such that it may be enforced by a federal court. In particular, "where the rendering forum lacked jurisdiction over the subject matter or the parties, full faith and credit is not required." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 386 (1996). Spain argues here that the arbitral tribunal lacked jurisdiction to issue the award, for two reasons. Spain first contends that the tribunal could not address its dispute with the RREEF investors because EU member states "lack authority to submit disputes that may require the interpretation of EU law"—i.e., any intra-EU dispute—"to adjudication outside the judicial system of the European Union (e.g., to arbitral tribunals)." MTD at 7; *see* ECF No. 66 at 11. Spain also contends that the tribunal lacked authority to order Spain to pay money damages, since "the European Commission has instructed that the payment of any award arising out of an investment arbitration within the EU would constitute unlawful state aid." MTD at 24; *see* ECF No. 66 at 11. For both reasons, Spain urges the Court to hold the award unenforceable under 22 U.S.C. § 1650a(a).

As the Court of Appeals has explained, however, "both the [ICSID] Convention and its implementing legislation strictly limit a federal court's authority to review an ICSID award," since "[s]earching re-examination . . . by enforcement courts would be contrary to the Convention's central purpose of ensuring a neutral framework for dispute resolution." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 518 (D.C. Cir. 2023) (citing ICSID Convention art. 54(1); 22 U.S.C. § 1650a(a)); *see also id.* ("The Convention reflects an expectation that the

6

courts of a member nation will treat the award as final.") (alteration omitted). Accordingly, an ICSID award "is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Id.* at 520. The record reflects that is true here.

During the arbitration, Spain challenged the tribunal's jurisdiction on both of the grounds it now seeks to collaterally resuscitate in this Court. It argued, citing Article 344 of the Treaty on the Functioning of the European Union (TFEU), that EU law precludes the application of the ECT to "intra-EU" disputes between EU member states and EU-based investors. *See* ECF No. 1-1, Ex. B ¶¶ 40–56. And it also argued, citing Articles 107 and 108 of the TFEU, that any compensation awarded by the Tribunal would be "equivalent to incompatible State Aid," which must be approved by the European Commission. ECF No. 17-1, Ex. A ¶¶ 707–714; *see also* ECF No. 17-1, Ex. B ¶¶ 10–11. The tribunal recognized but rejected both of these objections, deciding that the ECT permits arbitration of intra-EU disputes and does not conflict with EU law in so doing, and also that the ECT "prevails over any other norm" regarding state aid. ECF No. 1-1, Ex. B ¶¶ 71–90; ECF No. 1-1, Ex. C ¶¶ 199–204, 208–09. The Court cannot now second guess those decisions under the guise of full faith and credit review. *See, e.g.*, *Blasket*, 2024 WL 4298808, at *9 (rejecting argument that award lacked full faith and credit because it constituted unlawful state aid where Spain could have but did not litigate the question before the arbitral tribunal); *MOL*, 2025 WL 1134945, at *4 (rejecting argument that award lacked full faith and credit because of the alleged bar on intra-EU investor-State arbitration where Croatia litigated the question before the arbitral tribunal).

Spain does not contest that it raised these jurisdictional objections before the tribunal, and nowhere acknowledges the Court of Appeals' holding that that fact disposes of the full faith and credit analysis. Instead, Spain argues that, for three reasons, the Court must determine the tribunal's jurisdiction afresh. Spain begins by assigning significance to the ICSID implementing statute's statement that the "*pecuniary* obligations" imposed by an ICSID award are entitled to full faith and credit. ECF No. 66 at 11–12 (citing 22 U.S.C. § 1650a(a) (emphasis added)). Spain contends that, by contrast, "[t]he arbitrators' assertion of their own jurisdiction is a *non-pecuniary* aspect of the Award that gets no special deference." *Id.* at 12. But even assuming that argument is not squarely foreclosed by *Valores Mundiales*—as it appears to plainly be—it makes no sense on its own terms. As Blasket notes, there is no way to give full faith and credit to the pecuniary component of an award without giving full faith and credit to its jurisdictional underpinnings, just as there is no way to give full faith and credit to a state court judgment without giving full faith and credit to *its* jurisdictional holdings. *See* ECF No. 70 at 3; *see also Valores Mundiales*, 87 F.4th at 515 ("[Federal] courts are [] not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; . . . they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award.").

Spain points next to a claimed exception to the general rule against collaterally attacking jurisdiction that applies when the first proceeding "substantially infringed the authority of another tribunal or agency of government." ECF No. 66 at 12 (quoting *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988) (alteration omitted)). According to Spain, that happened in this case because "the ICSID tribunal disregarded EU courts' exclusive jurisdiction over EU law" by dismissing Spain's objection to intra-EU arbitration. *Id.* But as another court in this district

has recognized, the "exception" recognized in *Blinder* was "narrow[]" and concerned a specific circumstance not present here: one in which Congress, pursuant to its plenary authority over bankruptcy, crafted legislation that expressly deprived state courts of jurisdiction over property subject to ongoing bankruptcy proceedings. *Blasket*, 2024 WL 4298808, at *9 (citing *Blinder*, 837 F.2d at 1104; *Kalb v. Feuerstein*, 308 U.S. 433, 438–40 (1940)). Indeed, the Supreme Court has described the *Blinder* exception as limited to cases implicating "federal pre-emption," and has further noted that, in the case from which it originated, *Kalb*, the jurisdictional issue had not "actually been litigated in the first forum." *Durfee v. Duke*, 375 U.S. 106, 114 & n.12 (1963). "But no such overriding conditions are present here," *id.*, so the Court will decline Spain's invitation to abandon the principles mandating award enforcement described above. *See Blasket*, 2024 WL 4298808, at *9.

Finally, relying on various commercial arbitration cases arising under the FAA and the New York Convention, Spain contends that because it is "challeng[ing] whether an arbitration agreement exists in the first instance," the Court may not "delegate[]" that question to an arbitrator. ECF No. 66 at 12 (quotation marks omitted). Again, this argument flies in the face of the Court of Appeals' interpretation of the full faith and credit provision of ICSID's implementing statute, which counsels just the opposite. *See Valores Mundiales*, 87 F.4th at 515, 519–20; *see also Blasket*, 2024 WL 4298808, at *10 (holding that, under ICSID, Congress did not "intend[] the Court to consider whether the arbitrators exceeded their powers as might occur under the FAA"). But in any event, there is no dispute that a valid arbitration agreement exists here: that is exactly what *NextEra* held. *See* 112 F.4th at 1101–03 (explaining that subject matter jurisdiction under FSIA concerns "the existence or validity of the arbitration agreement" and finding subject matter jurisdiction proper based on Spain's assent to the ECT). To the extent that ICSID's implementing

9

statute somehow imports the FSIA subject matter jurisdiction analysis and requires a court to assess the threshold contract formation question, that has already happened and the question was resolved against Spain. *See id.*

Spain's argument here is really that ICSID's implementing statute requires the Court to independently assess the *scope* of Spain's agreement to arbitrate—namely, to determine whether it extends to intra-EU arbitration and the award of damages in a context like this. *See id.* at 1103. But as the Court of Appeals has held, by agreeing to the ECT, Spain "agreed to assign arbitrability determinations to the [arbitral] tribunal." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 878 (D.C. Cir. 2021); *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 112 (D.D.C. 2017) ("[B]y consenting . . . to proceed under the ICSID Additional Facility rules, Venezuela clearly and unmistakably assigned the question of arbitrability to the Tribunal . . . ."). Thus, even if the Court could undertake a more searching jurisdictional analysis, which it cannot, it would be essentially back where it began: the tribunal determined that it had jurisdiction to arbitrate Spain's dispute with the RREEF investors—an issue that Spain itself asked it to decide. That requires the Court to afford the arbitral award full faith and credit.

### B. Foreign Sovereign Compulsion

The foreign sovereign compulsion doctrine recognizes that, as a matter of international comity, U.S. courts generally should not "compel [] foreign person[s] to violate the laws of a different foreign sovereign on that sovereign's own territory." *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987). Spain argues that enforcing the arbitral award would have that effect here, for the same two reasons discussed above—because the ECT's arbitration provision was allegedly void ab in initio under EU law and because the tribunal allegedly lacked authority to award state

aid.  As Spain puts it, "[e]ven if the award were generally enforceable," comity "independently bars [its] enforcement."  ECF No. 66 at 19.

Consistent with the other courts to have evaluated this argument, however, the Court "concludes that [] comity principles do not favor barring enforcement of a judgment . . . where Petitioner seeks recognition of an ICSID award."  *Blasket*, 2024 WL 4298808, at *13 (granting enforcement petition where Spain argued that doing so would cause it to pay unlawful state aid); *see also MOL*, 2025 WL 1134945, at *6 (granting enforcement petition where Croatia argued that doing so would cause it to both pay unlawful state aid and honor an allegedly unlawful intra-EU arbitration agreement).  To the contrary, international comity favors *enforcement* in this context.  ICSID awards, including the one at issue here, "result[] from several years of arbitration proceedings in an international forum with its own international legal personality."  *Blasket*, 2024 WL 4298808, at *13.  Permitting respondents to contest their validity in federal district court—especially via objections expressly rejected by that international forum—would run directly counter to "the central precept of comity" that "the decisions of foreign tribunals should be given effect in domestic courts, . . . thereby promoting predictability and stability through satisfaction of mutual expectations."  *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984).

Moreover, the ICSID Convention itself "provides that final awards are binding and not subject to appeal or any other remedy," and Congress implemented that command by mandating that such awards "be strictly enforced."  *Blasket*, 2024 WL 4298808, at *13 (citing Convention art. 53(1); 22 U.S.C. § 1650a(a)).  Comity concerns are "essentially 'baked in' to the ICSID Convention and its implementing statute," which already require Spain and the United States to sanction the award.  *Id.*; *see* ECF No. 17 (Opp.) at 36–37.  Overriding them by dismissing the

11

petition would thus be no fix at all, because that would "place both Spain *and* the United States in conflict with their obligations under the ICSID Convention to 'recognize an award rendered pursuant to the Convention as binding and enforce the pecuniary obligations imposed by that award.'" *Blasket*, 2024 WL 4298808, at *13 (quoting ICSID Convention art. 54(1)) (alteration omitted). That is still true even if, as Spain maintains, "the Award is 'based on an interpretation of an international treaty that the treaty signers reject.'" ECF No. 69 at 8 (quoting *NextEra*, 112 F.4th at 1110).

### IV.   Conclusion

For the foregoing reasons, the Court will deny Spain's renewed motion to dismiss the petition, ECF No. 66. Because the parties agree that this decision "allow[s] the Court to resolve all of [the] arguments necessary for entry of judgment," ECF 59 ¶ 7, the Court will also grant Blasket's petition. Within 30 days of the issuance of this Opinion, the parties shall meet, confer, and jointly file a proposed final judgment. An Order will accompany this Opinion.

DATE: August 12, 2025

CARL J. NICHOLS
United States District Judge